**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HENRY DION WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:25-cv-203 |
| | ) | |
| v. | ) | |
| | ) | Chief Magistrate Judge Patricia L. Dodge |
| TINA WALKER, SCI FAYETTE | ) | |
| SUPERINTENDANT, et al. | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM**

Pending before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF No. 1) filed by Henry Dion Williams ("Petitioner") under 28 U.S.C. § 2254. For the reasons set forth below, the Court will deny the petition and will deny a certificate of appealability.

## I. Procedural History

Following a jury trial, Petitioner was convicted in the Court of Common Pleas of Washington County of murder of the first degree (18 Pa.C.S.A, § 2502(a)), possession of firearm prohibited (18 Pa.C.S.A. § 6105), and firearms not to be carried without a license (18 Pa.C.S.A. § 6106). *Commonwealth v. Williams*, CP-63-CR-0001527-2012. His convictions were based on evidence, including video and eyewitness testimony, that he shot and killed Rensfield Jarvis outside a bar in Washington, Pennsylvania. On November 26, 2013, he was sentenced to an aggregate term of life imprisonment.

Petitioner filed a direct appeal and the Superior Court of Pennsylvania affirmed the judgment of sentence on February 26, 2015. *Commonwealth v. Williams*, 120 A.3d 394 (Pa. Super.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

2015) (unpublished memorandum); ECF No. 11-2 at 97-125. The Supreme Court of Pennsylvania denied a petition for allowance of appeal on November 2, 2015. *Commonwealth v. Williams*, 125 A.3d 1201 (Pa. 2015).

On July 21, 2016, Petitioner filed a *pro se* petition pursuant to Pennyslvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Counsel was appointed and an amended petition was filed. Attached to the amended PCRA petition was a single witness certification in which counsel certified that Glenn Alterio, Petitioner's trial counsel, would testify that: (1) he did not file a motion to sever the charge at 18 Pa.C.S.A. § 6105 because he knew from experience that, in Washington County, such charges are tried with all others before a jury; and (2) he knows it is customary to make a motion for judgment of acquittal outside of the hearing of the jury, but he does not have an independent recollection that he did so in Petitioner's trial. The PCRA court dismissed the petition without an evidentiary hearing.[2] The order of dismissal was affirmed on December 6, 2023. *Commonwealth v. Williams*, 311 A.3d 565 (Pa. Super. 2023) (unpublished memorandum); ECF No. 11-2 at 231-239. The Supreme Court of Pennsylvania denied a petition of allowance of appeal on September 18, 2024. *Commonwealth v. Williams*, 326 A.3d 400 (Pa. 2024).

Petitioner commenced this litigation by placing his petition for habeas corpus in the prison mailing system on January 2, 2025. (ECF No. 1 at 15.) Respondents filed an answer. (ECF No. 13.) Petitioner filed a reply. (ECF No. 21.)

---

[2] Although Petitioner did not receive a hearing in the PCRA court, that court took his sole witness certification into consideration in its review of the PCRA petition. (*See* ECF No. 11-2 at 236.) Thus, Petitioner received the benefit of the PCRA court crediting his proposed witness.

## II. Discussion

### A. Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

### B. Standard of Review

In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

A finding of fact made by a state court has always been afforded considerable deference in federal habeas proceedings. AEDPA continued that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). In this Court, it applies "to any claim that was adjudicated on the merits" by the Superior Court of Pennsylvania and prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*, *Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

Subsection § 2254(d)(1) applies to questions of law and mixed questions of law and fact. A state-court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406. A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams*, 529 U.S. at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the

facts of the prisoner's case.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (en banc) (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must prove that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer* [*v. Andrade*, 538 U.S. 63 (2003)], *supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).[3] "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support

[3] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004). The Court of Appeals has instructed that when it applies, § 2254(d)(2) provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

C. Exhaustion and Procedural Default

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Proper exhaustion requires that a petitioner has "fairly presented" his claims to the state courts. *Id.* at 848.

Additionally, and importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *Id.* at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as

this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To summarize, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan*, 526 U.S. at 851-56 (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

A petitioner may avoid the default of a claim by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original).

A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.* at 324. In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice."

D. Petitioner's Claims

1. Ground One: Ineffective Assistance of Trial Counsel for Failure to Sever Charge Under Section 6105

Petitioner first asserts that his trial counsel was ineffective for failing to move to sever his charge under 18 Pa.C.S.A. § 6105, thereby allowing the jury to hear evidence of his prior conviction for possession of a weapon on school property as it was an element of the crime.[4] (ECF No. 1 at 5-7.) Petitioner raised this claim in the litigation of his PCRA petition. On appeal, the Superior Court set forth the appropriate standard for an ineffective assistance claim under, *inter alia*, *Strickland v. Washington*, 466 U.S. 558 (1984), and its Pennsylvania equivalent *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987), and adopted the PCRA court's opinion, in part, on the merits of the claim. (ECF No. 11-2 at 231-232).

Specifically, the Superior Court held:

> [W]e agree with the PCRA court's … conclusion that [Petitioner] has failed to prove that the admission of his prior offense caused him prejudice. *See* PCO at 10. As the court observes, "[t]he jury was not informed whether this predicate offense involved a firearm, was not appraised of the grading of the offense, nor any of the underlying facts of the offense." *Id.* at 9. Additionally, the court provided a cautionary jury instruction regarding [Petitioner's] prior conviction at three different points during the trial, including just after that evidence was introduced, *see* N.T., 9/9/13-9/13/13, at 278-79; at the close of the Commonwealth's case in chief, *see id.* at 319-20; and, again, during the closing jury charge, *see id.* at 366. There was also strong evidence supporting [Petitioner's] guilt, as detailed by the PCRA court in its opinion. *See* PCO at 1-6. Given this record, we agree with the court that [Petitioner] has failed to demonstrate a reasonable probability that, had the jury not heard about his prior conviction, the result of the trial would have been

[4] Section 6105 of the Pennsylvania Crimes Code prohibits a person who has previously been convicted of certain enumerated offenses (including possession of a weapon on school property) from, among other things, possessing a firearm.

> different. Thus, trial counsel was not ineffective for failing to move to sever [Petitioner's] charge of persons not to possess a firearm ….

(ECF No. 11-2 at 238 n.1.)

In relevant part, the PCRA court addressed this claim as follows:

> Pennsylvania employs the three-prong *Pierce* test to evaluate ineffective assistance of counsel claims. *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). To be entitled to post-conviction relief, a defendant must demonstrate that:
>
> > (1) the claim underlying the ineffectiveness claim has arguable merit;
> >
> > (2) counsel's actions lacked any reasonable basis; and
> >
> > (3) counsel's actions resulted in prejudice to [the defendant].
>
> *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009). It is well settled that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Pierce* test, the court may proceed to that element first. *Commonwealth v. Lesko*, 15 A.3d 345, 374 (Pa. 2011).
>
> . . .
>
> [Petitioner's] first issue on appeal is whether the PCRA court erred in dismissing his PCRA, where trial counsel rendered ineffective assistance by failing to sever his charge under 18 Pa.C.S. § 6105, thereby allowing the jury to hear evidence of [Petitioner's] prior … conviction. The PCRA court found that this claim was unsupported by the record and without merit.
>
> [Petitioner] claims that trial counsel was ineffective for failing to exclude from the jury the fact of [Petitioner's] prior conviction. [Petitioner] was charged with and convicted of Possession of Firearm Prohibited, an element of which is [Petitioner's] prior conviction for a predicate offense under 18 Pa.C.S.A. § 6105. [Petitioner] claims that trial counsel was ineffective for not seeking a separate trial for this charge under Rule of Criminal Procedure 583.
>
> . . .
>
> The jury was not informed whether this predicate offense involved a firearm, was not appraised of the grading of the offense, nor any of the underlying facts of the offense. In fact, the predicate offense of Possession of weapon on school property is not a felony, but a misdemeanor.[fn 26] Except for this charge, the jury was unaware of [Petitioner's] prior record. In addition, immediately after the predicate conviction was entered into evidence, the trial court instructed the jury that the conviction was to be considered only for a limited purpose:

> Ladies and gentleman [sic], two things: you just heard evidence that Mr. Williams, the Defendant, had been convicted of this crime, Possession of a Weapon on School Property in Fayette County in 2006. This testimony is being offered for a limited purpose. The only purpose which you may consider this evidence of a prior criminal conviction is in determining whether or not the Defendant was a person prohibited by law from possessing, using, controlling, selling, transferring, or manufacturing a firearm on the date in question. That is one of the offenses that he is charged with and one that you will consider for the offense of Possession of Firearm Prohibited. You may not consider this evidence of his prior conviction in deciding whether or not the Defendant committed any other offense that he's charged with in this case...I'll go over that again at the conclusion of the trial, but just remember that that prior conviction is only to be considered for that crime of Possession of Firearm Prohibited and not the other two charges for which the Defendant is charged.[fn 27]

The trial court repeated this cautionary instruction at the close of the Commonwealth's case,[fn 28] and again as part of its final instruction to the jury.[fn 29]

Moreover, this was not a circumstantial case, as [Petitioner] would suggest. [Petitioner] was captured on video speaking with the victim at the bar, leaving the bar with the victim, and moments later, two eyewitnesses saw [Petitioner] shoot the victim at point blank range. While there was significant circumstantial evidence to support the eyewitness testimony, including [Petitioner's] vehicle being left at the scene, there was overwhelming direct evidence from which the jury could find [Petitioner] guilty. [Petitioner] failed to prove … that he was prejudiced by his counsel's failure to seek severance of the charges.

[footnote 26] 18 Pa.C.S.A. § 912(b).

[footnote 27] TT pp. 278-79.

[footnote 28] TT p. 320.

[footnote 29] TT p. 366.

(*Id.* at 235-236.)

In support of this claim, Petitioner baldly asserts that he was prejudiced by counsel's failure to seek to sever the charge under Section 6105. Although he challenges the state courts' contrary legal conclusion, he does not, as he must under 28 U.S.C. § 2544(d)(1), show that the determination was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court. He cites no clearly established federal law that mandates another determination. Instead, he cites only *Strickland* for the ineffectiveness standard and *Zafiro v. United States*, 506 U.S. 534, 539 (1993), for the standard for severance. *Zafiro*, however, concerned the severance of trials of co-defendants, not the severance of a charge in a single defendant's trial. Accordingly, *Zafiro* is not applicable to this case.

Indeed, Petitioner makes no attempt to challenge the state courts' holdings on this claim. For instance, he claims that the evidence of his prior conviction "formed a fixed bias in the juror's [sic] mind that the petitioner has a known reputation of possessing a firearm in his past." (ECF No. 21 at 2-3.) But he does not address the state courts' finding, which is supported by the record,[5] that the jury was not informed that his prior offense involved a firearm.

In short, Petitioner has not carried his burden to show that he is entitled to habeas relief on this ground.

### 2. Ground Two: Ineffective Assistance of Trial Counsel for Moving for Judgment of Acquittal in the Presence of the Jury

Petitioner next asserts that his trial counsel was ineffective for moving for a judgment of acquittal in the presence of the jury. (ECF No. 1 at 7-8.) He raised this claim in the litigation of his PCRA petition. On appeal, the Superior Court of Pennsylvania adopted the PCRA court's opinion as its own on this issue. (ECF No. 11-2 at 232.) The PCRA court addressed the claim as follows:

> The second issue raised by [Petitioner] in his appeal is that his trial counsel was ineffective for moving for judgment of acquittal in the presence of the jury. The PCRA court found that this claim was unsupported by the record and without merit. Trial counsel certified that it was his practice to make such a motion at sidebar, although he could not recall specifically whether that was done in this case. From the trial transcript, it appears that the defense motion for judgment of acquittal was made in the presence of the jury, and that the trial court denied the motion on the record immediately thereafter. However, despite PCRA counsel's characterization of this exchange, it could not be construed as a signal to the jury that the court "was satisfied there was sufficient evidence to convict" [Petitioner] of murder.

[5] T.T. at 275, 278-79, 320, and 366.

> Defense Counsel: At this time at the close of the Commonwealth's case I would make a motion for judgment of acquittal.
>
> Trial Court: . . . As to the motion for judgment of acquittal the motion is denied.[fn 30]

There was no other argument or discussion on the motion or reference to any evidence presented. If a member of the jury was sophisticated enough to understand the meaning of a "motion for judgment of acquittal," then she or he would understand that the court's consideration of the motion was a question of law, and that denial of the motion meant only that there was sufficient evidence for the jury to consider a verdict, and not a determination that there was sufficient evidence to convict defendant of murder. *See Commonwealth v. Smith*, 853 A.2d 1020, 1028 (Pa.Super. 2004). "A challenge to the sufficiency of the evidence is entirely distinct from a challenge to the weight of the evidence." *Id.*

Moreover, the court instructed the jury at the beginning of the trial and after closing arguments that the jurors were the sole judges of the facts:[fn 31]

> Trial Court: I am not, as I have indicated many times, the judge of the facts. It's not for me to decide what the true facts are concerning the charges against the Defendant. You, the jurors, are the sole judges of the facts. It will be your responsibility to consider the evidence, to find the facts and apply those facts to the law as I have instructed you on the law and applying the law to the facts as you find them to make your decision as to whether the Defendant has been proven guilty beyond a reasonable doubt.[fn 32]

Nevertheless, PCRA counsel cites Second Circuit District Court authority and Connecticut appellate authority, (*State v. Edge*, 47 Conn.App. 743 (Conn.App.Ct. 1998)), for his bold conclusion that the "impact of the Court's denial of the motion for judgment of acquittal is immeasurable" and that [Petitioner] was manifestly prejudiced.

At the outset, the court notes that [Petitioner] bears the burden of proof, by a preponderance of the evidence, that his claim of counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). [Petitioner] has failed to sustain his burden that he has been prejudiced by the presentation of the motion for judgement of acquittal in the presence of the jury. Moreover, the non-precedential, non-jurisdictional authority relied upon by [Petitioner] does not support his conclusion of manifest prejudice. The authority cited by [Petitioner] expressly holds that a finding of prejudice involves review of the entire record, stating "that while ruling on such motions outside the presence of the jury is the preferred practice, it is neither a mandatory rule nor a constitutional requirement." *State v. Edge*, 47 Conn.App. 743, 748 (Conn.App.Ct. 1998). "Determining whether such a ruling in the presence of the jury constitutes prejudicial error requires a

> careful examination of the record as a whole, including any cautionary instruction given to the jury by the court, and must be determined on a case-by-case basis." *Id.*
>
> As noted above, the trial court issued cautionary instructions to jury at the beginning of the trial and after closing arguments that the jurors were the sole judges of the facts:[fn 33] Furthermore, [Petitioner's] bald allegation that the impact of the jury hearing the motion for judgment of acquittal was "immeasurable" and that he "was prejudiced by this misstep" is insufficient to sustain his burden of proof and warrant relief. As stated previously, while there was significant circumstantial evidence to support the jury's guilty verdict, this was not a circumstantial case. [Petitioner] was captured on video leaving the bar with the victim, and, moments later, two eyewitnesses saw [Petitioner] shoot the victim at point blank range. There was overwhelming direct evidence, supported by circumstantial evidence, from which the jury could find [Petitioner] guilty.
>
> [footnote 30] TT pp. 319, 320.
>
> [footnote 31] TT p. 352; pp. 354-355; p. 357; p. 369.
>
> [footnote 32] TT p. 359.
>
> [footnote 33] TT p. 352; pp. 354-355; p. 357; p. 369.

(*Id.* at 236-237.)

As with the previous claim, the state courts made a legal determination which Petitioner fails to show was contrary to, or involved an unreasonable application of *Strickland* or any other clearly established federal law as determined by the Supreme Court. He cites no federal law in support of this claim. Thus, he has failed to meet his burden under 28 U.S.C. § 2544(d)(1) and is not entitled to habeas relief on this ground.

3. Grounds Three and Four: Trial Court Error in Granting the Commonwealth the Right to Use Statements of Desiree Wilson as Rebuttal

Finally, Petitioner raises two claims related to the trial court's partial grant of Petitioner's motion in limine to preclude the testimony of Desiree Wilson. (ECF No. 1 at 8-11.) In both claims, Petitioner asserts that the trial court erred in failing to grant the motion in limine in full because Wilson's statement had not been provided to the defense in discovery.

The trial court summarized the relevant background of this claim as follows:

> Near the conclusion of the Commonwealth's case-in-chief, the prosecution disclosed that police had interviewed an additional witness, Desiree Wilson. The prosecution came to learn about Ms. Wilson through a confidential informant. The informant submitted a report and statement to Lt. Stanek of his understanding of Ms. Wilson's knowledge of the incident. However, in order to inquire as to any knowledge of Ms. Wilson regarding the homicide, it was necessary for the prosecution to compromise the identity of the confidential informant. The prosecution initially decided not to pursue this avenue, so Ms. Wilson was never interviewed.
>
> During the course of trial, the Commonwealth made contact with Ms. Wilson about her knowledge and the informant agreed to the Commonwealth's strategy and was willing to come forward. Ms. Wilson was then interviewed on September 12, 2013. The defense was also given the opportunity to interview Ms. Wilson on September 12, 2013. During the course of those interviews, Ms. Wilson revealed that on the night of the murder, [Petitioner] made a cell phone call to her and asked her to pick him up near the crime scene. Also, the next day [Petitioner] called her and asked her to go pick up the gun used in the shooting, and disclosed to her where to find the weapon. Ms. Wilson then reached out to the informant. The informant directed her to not assist [Petitioner] in any of his requests.
>
> Defense counsel argued that the Commonwealth and police had knowledge of this information for an extended period of time and under Pa.R.Crim.Pro.573, the Commonwealth was required to disclose this witness. Since the Commonwealth failed to timely disclose this in discovery, any testimony should be deemed inadmissible. Defense counsel also noted that this information would affect the strategy of the defense.
>
> The Trial Court initially determined that the testimony was admissible and that the Commonwealth was excused from the mandatory discovery disclosure due to the nature in which the information was uncovered from the informant. However, after further argument and reconsideration of the matter, the Trial Court determined that the information was required to be mandatorily disclosed as inculpatory evidence, and by not providing the evidence, it was unfair surprise to the defense.
>
> . . .
>
> Desiree Wilson was not permitted to testify. No statements by Ms. Wilson were admitted into evidence, in any manner, for any purpose. In granting the defense motion to exclude this evidence, however, the Court indicated that Ms. Wilson could be called to testify as a rebuttal witness if the "door was opened."
>
> . . .

> While declining the admission of Ms. Wilson as a witness for the Commonwealth's case-in-chief, the Trial Court determined that if any evidence presented by the defense, including testimony by [Petitioner] suggesting he was not the shooter, the Court would allow Ms. Wilson's testimony to be offered to impeach such testimony on rebuttal.

(ECF No. 11-2 at 115-117.)

In his Petition, under Ground Four, Petition asserts the denial of a fair trial and "due process." (ECF No. 1 at 10.)[6] However, Respondents argue that Petitioner presented these claims in state court solely as violations of Pennsylvania Rule of Criminal Procedure 573 and that, aside from an unsubstantiated and bald reference to "due process," his claims are state law claims which are not cognizable in this federal habeas action. (ECF No. 12-13.) In his Reply, Petitioner does not address these arguments. Instead, for the first time, he asserts a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (ECF No. 21 at 4-5.)

As set forth above, in order to exhaust a claim, the claim must be "fairly presented" to the state courts. *O'Sullivan*, 526 U.S. at 848. As the Third Circuit has explained, a claim is "fairly presented" where there is:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Minett v. Hendricks*, 135 Fed. Appx. 547, 552 (3d Cir. 2005) (citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) and *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1232 (3d Cir. 1992)).

---

[6] Under Ground Three, Petitioner merely asserts trial court error without a constitutional (or other) basis.

Petitioner raised these claims in his direct appeal. However, in his appellate brief to the Superior Court he did not cite to *Brady*, the federal Constitution, or any judicial decision based on the federal Constitution in support of these claims. (ECF No. 11-2 at 28-33.) Instead, he argued violation of the state discovery rule, concluding, "When reviewing the record herein, it is clear that the Pa.R.C.P. 573 was violated, that the court's ruling, even limited to allowing the Commonwealth the use of the testimony only in rebuttal, resulted in surprise to the defendant, resulted in having a chilling effect on the defendant's decision whether or not to testify at his trial, and resulted in a violation of his constitutional right to due process and a fair trial." (*Id.* at 30, 33.) As the United States Court of Appeals for the Third Circuit has held, "[i]t is not sufficient simply to invoke 'due process' or 'fair trial' rights in the state court." *Minett v. Hendricks*, 135 Fed. Appx. 547, 552 (3d Cir. 2005) (citing *Keller v. Larkins*, 251 F.3d 408, 414-415 (3d Cir. 1999)).

In addressing the claims, the Superior Court affirmed on the basis of the trial court's "interpretation and application of Rule 573(B)(1)(b)." (ECF No. 11-2 at 103.) Indeed, the trial court relied on the text of the state procedural rule and Pennsylvania state court cases interpreting that rule. (*Id.* at 115-118.) Neither state court identified these claims as federal constitutional claims.

In short, Petitioner did not fairly present to the state courts a federal constitutional claim concerning the admissibility on rebuttal of evidence from Desiree Wilson. Thus, to the extent that Petitioner intends to raise such a claim here, it is unexhausted and now procedurally defaulted. Petitioner does not argue that he can overcome his default under either the "cause" and "actual prejudice" or the "miscarriage of justice" exceptions.

Further, to the extent Petitioner is raising these claims as challenges to the state court's holdings concerning a Pennsylvania Rule of Criminal Procedure, Respondents are correct that any such challenge is not cognizable in this federal habeas proceeding. *See Evans v. Att'y Gen. Josh*

*Shapiro*, Civ. A. No. 22-1713, 2025 WL 3466690, at *6 (W.D. Pa. Oct. 28, 2025) (citing *Estelle*, 502 U.S. at 67) (finding that habeas relief does not lie for errors of state law, including claims of violations of Pennsylvania Rules of Criminal Procedure and discovery rules.)

Accordingly, Petitioner is not entitled to habeas relief on these grounds.

## III. Certificate of Appealability

The Antiterrorism and Effective Death Penalty Act of 1996 codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claims should be denied for the reasons given. Thus, a certificate of appealability will be denied with respect to his claims.

## IV. Conclusion

For these reasons, the Court will deny the petition and will deny a certificate of appealability.

An appropriate Order follows.

Date: November 24, 2026

/s/ Patricia L. Dodge
PATRICIA L. DODGE
CHIEF UNITED STATES MAGISTRATE JUDGE